LOYD, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

**St. Louis Court of Appeals, May 16, 1905.**

1. **INSURANCE:** Fraternal Benefit Societies: Illinois Statute. The statute of Illinois defining fraternal benefit societies is in the exact language of the Missouri statute (Section 1408, Revised Statutes of 1899), and such societies, organized under the law of Illinois and licensed to do business in this State, are on the same footing as domestic ones, distinguishing Baltzell v. M. W. of A., 98 Mo. App. 153.

2. ———: ———: Definition. A society which has a lodge system with ritualistic form of work, representative form of government and is carried on for the sole benefit of its members and their beneficiaries and not for profit, is a fraternal benefit society.

3. ———: ———: Amending Charter. An insurance society which accepts the provisions of the act under which it is or-

ganized restricting its powers, is bound by the provisions of the act and can only issue benefit certificates to classes named therein.

4. ———: ———: **Foreign Societies: Beneficiaries.** A foreign insurance society with a license to do business in Missouri, as a fraternal benefit society, could not make any class of persons beneficiaries of benefit certificates who are not named in the Missouri laws.

5. ———: ———: **By-Laws.** Where an application for insurance in a fraternal benefit society by express agreement makes the by-laws a part of the contract of insurance, such by-laws are binding upon both parties to the benefit certificate, as if they had been incorporated in it.

6. ———: ———: **Initiation.** Where the by-laws which were, by agreement, made a part of the contract between a fraternal benefit society and the holder of a benefit certificate, provided that before the certificate should take effect as a valid and binding contract, the member should be adopted (initiated) into the local organization there being no method provided, other than initiation, by which one could become a member, such initiation was a condition precedent and must have been performed before the benefit certificate could be issued.

7. ———: ———: ———: **Officers: Waiver.** Where initiation is necessary before one can become a member of a fraternal benefit society and have a right to receive a benefit certificate, the officers of a local organization cannot waive that requirement and the issuance of a certificate without it does not bind the organization.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED.

*Benj. D. Smith, M. R. Smith* and *W. S. C. Walker* for appellant.

(1) The defendant, Modern Woodmen of America, is a fraternal benificiary society as defined by the fraternal beneficiary law of Illinois, approved and in force July 22, 1893, and is now doing business in the State of Illinois under the said act. Bastain v. M. W. of A.,

166 Ill. 595, 46 N. E. 1090. (2) The act of the Illinois Legislature approved and in force June 22, 1893, under which defendant is now operating in the State of Illinois, and the act of the Missouri Legislature approved March 16, 1897, the said acts being fraternal beneficiary laws of the said States are in substance uniform. Act of Illinois Legislature, approved and in force June 22, 1893, R. S. 1899, art. 11, ch. 12. (3) The defendant is a fraternal beneficiary society, as defined by the Missouri statute and as such is exempt from the general insurance laws of the State of Missouri. R. S. 1899, sec. 1408. Brasfield v. M. W. of A., 88 Mo. App. 208; McDermot v. M. W. of A., 71 S. W. 833; Shotliff v. M. W. of A., 73 S. W. 326; Hudnall v. M. W. of A., 77 S. W. 84. (4) The contract of insurance by and between the society and the member includes the application, the certificate, by-laws and constitution of the defendant. Third Vol. 2d Ed. Am. & Eng. Cycle. of Law, p. 1081; Association v. Yettel Elsner, 26 Mo. App. 108; Niblack on Benefit Societies, par. 136, p. 271; Bacon on Benefit Societies, pars. 37, 91, 116; Shuman v. A. O. U. W., 82 N. W. 331; Congdon v. Mutual Reserve Association, 73 Am. St. Rep. 179; Royal Arcanum v. Brashers, 73 Am. St. Rep. 244; Holland v. Sup. Council, 54 N. J. Law 490; Sup. L. K. of P. v. LaMalta, 95 Tenn. 157. (5) All members of the defendant society and all benefit certificates issued by the said society and all rights thereunder are subject and subordinate to the by-laws of the defendant, and neither the local camp of the defendant society nor the officers and members thereof had any power or authority to waive any of the provisions of the by-laws relative to the adoption of the member or the delivery of the certificate to a member while in good health. Lavin v. A. O. U. W., 78 S. W. 325; Borgraefe v. Knights of Honor, 22 Mo. App. 141; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Harvey v. Grand Lodge, A. O. U. W., 50 Mo. App. 477; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Lyon v. Royal Society of Good

Fellows, 153 Mass. 83, 26 N. E. 236; McCoy v. Ins. Co., 152 Mass. 272; Miller v. Fire Ass'n, 42 N. J. Eq. 459; Royal Highlanders v. Scoville (Neb.), 92 N. W. 206; Graves v. M. W. of A. (Minn.), 89 N. W. 6; Modern Woodmen of America v. Tevis, 117 Fed. 369, 54 C. C. A. 293 and cases cited therein. (6)   Until the actual delivery of the certificate in accordance with the by-laws, the relations of the parties were purely voluntary, and no rights are vested in the applicant by virtue of his application, and mere delay in the completion of the contract by the society would confer no rights.   Misselhorn v. Ins. Co., 30 Fed. 545.   (7)   The agreement in the application and the provision contained in the by-laws that the member should be adopted into the local camp and the certificate should be delivered to him while in good health before same became binding, are reasonable, and are binding upon the applicant and said provisions not having been complied with, the certificate was not in force.   Matkin v. Knights of Honor (Texas), 18 S. W. 306; Bacon on Ben. Soc. (new Ed.), sec. 273a; Taylor v. A. O. U. W., 29 N. Y. Supp. 773.   (8)   Even though the local camp or the officers thereof be deemed the agents of the society, still they had no authority to waive any of the provisions of the by-laws or any other laws which relate to the substance of the contract for the payment of benefits between the member and the society, it being expressly provided in the by-laws (which are a part of the contract), that "Sec. 34.   No Waiver of any Prerequisite.—No officer of this society, or any local camp or officer thereof, is authorized or permitted to waive any of the provisions of these laws, or of any other laws of this society which relate to the substance of the contract for the payment of benefits between the member and the society, whether the same be now in force or be hereafter enacted.   Borgraefe v. Sup. Lodges, 22 Mo. App. 127; McClave v. Life Association, 26 Atl. 78; Field v. K. & L. of S., 89 N. W. 773; Royal Highlanders v. Scoville, 92 N. W. 206; Northern Ass'n Co. v. Bldg. Associa-

tion, 183 U. S. 308; M. W. of A. v. Tevis, 54 C. C. A. 293; 117 Fed. 369. (9) The applicant having agreed that any benefit certificate issued to him should not be in effect until delivered to him while in sound health, and the by-laws containing a like provision, there can be no recovery if it is shown that applicant was not in sound health at the time the policy was delivered. Thompson v. Ins. Co. (Neb.), 91 N. W. 75; Ins. Co. v. Howle (Ohio), 56 N. E. 908; Plumb v. Ins. Co. (Mich.), 65 N. W. 611; Cable v. Ins. Co. (C. C. A.), 111 Fed. 19. (10) The warranty made by the applicant in his application that he was in good health and free from disease was a continuing warranty as to the condition of the applicant's health at the time of the completion of the contract. Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Bingler v. Ins. Co. (Kan.), 61 Pac. 672; Cable v. Ins. Co. (C. C. A.), 111 Fed. 19; Ins. Co. v. Railway, 38 Law J. Ch. 132, 19 Law T. (I. S.) 476; Insurance Co. v. Ewing, 92 U. S. 377, 23 Law Ed. 610.

*J. P. Tribble* for respondent.

(1) The defendant, Modern Woodmen of America, is not a fraternal beneficiary society, as defined by the laws of the State of Missouri. Baltzell v. Modern Woodmen, 71 S. W. (Mo.) 1071. (2) The fact that defendant has a lodge system and representative form of government, contrary to the law under which it was organized, does not alter its character as an insurance company. The fact that it calls itself a fraternal beneficiary association does not prove it to be one. (3) The fact that defendant is licensed to do business in the State of Missouri as a fraternal beneficiary society is no proof that it is one. Its standing as a society depends upon the law of its organization and its manner of doing business, as well as the character of the contracts which it writes. (4) The statement in the benefit certificate that the deceased had been adopted as a member of the

order cannot be denied after the death of the assured. All previous negotiations, representations or agreements, were merged in that certificate, and the execution of the certificate is an undeniable admission of the performance by both parties of all acts necessary to put the contract in force, and it cannot be disproved or varied by parol testimony. Wood on Fire Insurance, 69, 70; Dobyn v. Assn., 144 Mo. 95. (5) Where a policy is delivered, in fact, the defendant cannot deny its validity, or its complete execution, under a general denial. The plea must be verified. Ins. Co. v. Brand, 59 Ill. 79; Order of Foresters v. Zak, 136 Ill. 185. (6) The main question to be decided is as to whether or not the officers of the local camp are the agents of the head camp, and, if so, can they make a waiver, or create an estoppel, against the head organization. The subordinate lodge and is officers are the agents of the association, and not of the members. K. of P. v. Bridges, 39 S. W. (Tex.) 333; Pruditzky v. K. of H., 43 N. W. (Mich.) 373; Order of Foresters v. Schweitzer, 171 Ill. 325; Ins. Co. v. Spankneble, 52 Ill. 52; Andres v. Modern Woodmen, 76 S. W. (Mo.) 701; Winters v. K. of P., 69 S. W. (Mo.) 662; Convereni v. Order of Pyramids, 72 S. W. (Mo.) 141; Ormby v. Ins. Co., 72 S. W. (Mo.) 139; Callis v. Modern Woodmen, 72 S. W. (Mo.) 713; Shotliff v. Modern Woodmen, 72 S. W. (Mo.) 326. (7) The officers of the local camp are the agents of the head camp and as such may waive the rules of the association and estop their principals from insisting thereon. Benefit Association v. Tucker, 157 Ill. 194; Assn. v. Schell, 29 Pa. St. 31; Mystic Circle v. Crawford, 75 S. W. (Tex.) 844; Ins. Co. v. Spankneble, 52 Ills. 53; Benefit Association v. Tucker, 157 Ill. 194; A. O. U. W. v. Brand, 46 N. W. (Neb.) 95; Frame v. W. O. W., 67 Mo. App. 127. (8) Being agents of the head camp, they have authority to waive any of the rules of the society that do not relate to the substance of the contract between the society and its members. K. of P. v. Withers, 176 U. S. 260; Boward

v. Bankers Union, 68 S. W. (Mo.) 369; Ins. Co. v. Finley, 68 S. W. (Tex.) 695; Convereni v. Order of Pyramids, 72 S. W. (Mo.) 141. There is no other means provided for the admission of members, or delivery of benefit certificates, except through the local camp. By-laws, sec. 24 (Abstract, p. 179); By-laws of the Society, secs. 16 to 25 inclusive (Abstract, pp. 178 to 180).

## STATEMENT.

The suit is to recover the amount ($2,000) on a benefit certificate issued by defendant on the life of James W. Loyd for the benefit of plaintiff, Loyd's wife. The petition is in the usual form and alleged that defendant is a fraternal beneficiary society incorporated under the laws of the State of Illinois and authorized to do business in the State of Missouri. The answer admits and also alleges that defendant is a fraternal beneficiary society incorporated under the laws of the State of Illinois and duly licensed to do business in the State of Missouri; admits the execution of the benefit certificate issued and filed with the petition; admits that plaintiff is the beneficiary named in the certificate and that she bore the relation of wife to Loyd; admits the death of Loyd on April 3, 1901, and that proofs of loss were duly furnished and admits that it refused to pay the loss. For an affirmative defense the answer alleged, in substance, that the application of Loyd for insurance and the by-laws of the order were expressly made a part of the contract of insurance and that defendant relied upon the truth of Loyd's representations in his application for insurance. That in said application is the following statement:

"I have verified each of the foregoing answers and statements from 1 to 35 inclusive, adopted them as my own whether written by me or not, and declare and warrant that they are full, complete and literally true, and I agree that the exact literal truth of each shall be a condi-

tion precedent to any binding contract issued upon the faith of the foregoing answers. I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and the Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof; and I further agree that if any answer and statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the laws of said Modern Woodmen of America, whether now in force or hereafter adopted, that my benefit certificate shall be void."

The answer proceeds:

"Defendant says that at item 17 in said application the said James W. Loyd was asked the question 'Are you now of sound body, mind and health, and free from any disease or injury,' and he, the said James W. Loyd, answered, stated and warranted, 'Yes.' Defendant avers that under the form of the contract applied for in said application, said answer and statement constituted a continuing warranty, and defendant avers that said statement and warranty by James W. Loyd was not true at the time of the attempted delivery to him of the benefit certificate as alleged in plaintiff's petition. Defendant avers that the condition of health certified to and warranted by said James W. Loyd in his answer to said question did not continue as so warranted to the completion of the contract applied for in said application, and defendant avers the fact to be that no delivery of the benefit certificate herein sued on was ever made to the said James W. Loyd, while in the condition of sound health so stated and warranted to defendant by him in said application.''

For further defense, the answer alleged that at the time the application was made, the following by-laws of the society were in force:

"Sec. 24. Upon receipt of the benefit certificate, the local clerk shall notify the candidate, and he shall be adopted by the camp at the next or some regular or special meeting occurring at the camp hall, within sixty days after the issuance of such certificate, but such certificate shall not be of force until said adoption ceremony shall have been performed.

"Sec. 33. The liability of this society for the payment of benefits upon the death of a beneficial member shall not begin until he shall have been adopted, nor until he shall have performed all acts and complied with all of the requirements prescribed in these laws, and shall have taken the obligations prescribed in the ritual, nor until the acts herein prescribed for the local camp shall have been fully complied with by it, nor until the application shall have been duly approved by the local and head physicians and a benefit certificate issued and delivered to the applicant while in good health."

It is also alleged "that the said application, executed and delivered as aforesaid by said James W. Loyd, contained, among other things, the following:

" 'I fully understand the objects, organization, mode of government and laws of this society, and particularly that part of the laws defining the qualifications for, and the restrictions upon its membership. . * * * I further understand and agree that the laws of this society now in force or hereafter enacted enter into and become a part of every contract of indemnity by and between the members and the society, and govern all rights thereunder.'

"Defendant avers that the said James W. Loyd was never adopted into defendant's society, and that he had not performed all acts and complied with all the requirements prescribed in the by-laws of defendant society, and had not taken the obligations prescribed in the ritual,

and that all the acts prescribed in defendant's said by-laws for the local camp had not been fully complied with as to said James W. Loyd, and that said benefit certificate was never delivered to James W. Loyd, while he, the said James W. Loyd, was in sound body and health, or in accordance with, or pursuance of, the by-laws of defendant order."

When the case was called for trial, plaintiff, by permission of court, over the objection of defendant, amended her petition by striking out the words "as a fraternal benefit association," and filed an amended reply wherein she denied that defendant is a fraternal benefit society but alleged it is an insurance corporation, organized under the laws of the State of Illinois, approved July 13, 1883, for the purpose of furnishing life insurance or pecuniary benefits to the wives, orphans, heirs, relatives and devisees of deceased members or for accident or permanent disability indemnity to members thereof; denied specifically the new matter pleaded as defenses to the action; alleged that Loyd was a member of the local camp whose officers were the agents of defendant and that these officers, by their conduct, waived the formal adoption of Loyd into the order before delivering to him the benefit certificate sued on, and pleaded certain conduct of the officers of the order as estopping defendant to plead the special defense set forth in its answer.

Plaintiff recovered judgment for the full amount of the certificate. Motions for new trial and in arrest were filed and by the court overruled, whereupon defendant appealed to this court.

There is practically no conflict in the evidence adduced on the trial. It shows that James W. Loyd made application for membership in local camp No. 8229 of the defendant order; that his application was voted on by the local camp and he was duly elected to become a member; that his application for a benefit certifictae was also duly made and forwarded to the head camp of the order at Rock Island, Illinois, where it was examined

by the proper officers of defendant and the certificate
prepared and executed by the proper officers of de-
fendant and forwarded to the clerk of local camp
No. 8229 to be delivered to Loyd when he should
be adopted into the camp; that after the favor-
able vote on the application of Loyd, he presented
himself at a stated meeting of the local camp for adop-
tion or initiation. No quorum being present at the
time, he could not be adopted and an adjourned meeting
to a future date for his adoption was set. The camp met
pursuant to adjournment, but Loyd was not able to be
present on account of the illness of himself and children.

The laws of the order provide that before benefit
certificates can become effective, they must be signed by
the consul and clerk of the local camp as well as by the
member. On March 27 or 31, (the evidence is not clear
on which of these dates) V. V. Randol, the consul of the
local camp and the clerk, signed the certificate and on
Sunday, March 31, it was handed by the clerk of the
local camp to a friend or neighber of Loyd, with instruc-
tions to deliver it to him. This friend took the certifi-
cate to Loyd's house, a short distance in the country,
and found Loyd sick in bed but able to sit up and sign
his name to the certificate. Loyd signed the certificate
and retained it in his possession until the third day
thereafter when he died of pneumonia. Loyd had paid
$1.10 to the society as dues, etc., to obtain the certificate.
This amount was afterwards tendered to plaintiff by the
society but she refused to accept it. The same tender
was made in court after the suit was commenced and re-
fused.

There is no substantial evidence that the local camp
ordered or voted that the certificate should be delivered
to Loyd before his adoption, but it is shown that three
of the officers of the local camp, the consul, clerk and
banker, agreed that as Loyd had been duly elected and
his medical exmination had been approved and as he had
paid the required dues and had presented himself at a

regular meeting of the camp for adoption at which there was no quorum, it was the fault of the camp and not of Loyd that he was not adopted and for these reasons he was equitably entitled to the certificate and with knowledge that he was sick at the time (not with knowledge that he was dangerously ill), the consul and clerk signed the certificate and sent it to him. It appears that a member is adopted into the local camp by a ceremony partially secret and partially ritualistic and that he is required to take certain obligations. There are two classes of members, beneficiary and social. The record shows the society was originally incorporated under the laws of the State of Illinois, enacted in 1883; that in 1893 the Legislature of the State of Illinois passed an act for the organization and government of fraternal benefit associations organized and to be thereafter organized. Section 1 of the act defines a fraternal benefit society to be "a corporation, society or association founded or organized or carried on for the sole benefit of its members and their beneficiaries and not for profit." These societies are required to have a lodge system with ritualistic form of work and a representative form of government and are authorized to make provisions for the payment of benefits in cases of disability and death, or either, resulting from either disease, accident or old age of its members. They are authorized to maintain and disburse a reserve fund for the purpose of paying disability and death benefits. This fund is required to be derived from assessments or dues collected from the members. Death benefits can only be paid to the "families, heirs, blood relatives, affianced husband or affianced wife or to persons dependent upon the member." The act contains also provisions for making charitable institutions beneficiaries. Section 2 of the act reads as follows:

"Sec. 2. All such societies coming within the description as set forth in section 1 of this act, organized under the laws of this or any other State, and now doing

business in this State, shall be considered duly organized, and may continue such business. *Provided,* that they hereafter make application for such permission and comply with the provisions of this act regulating annual reports, and the designation of the insurance superintendent as the person upon whom process may be served, as herein provided."

Section 4 of the act requires of societies doing business in the State, to make annual reports to the insurance superintendent. Section 6 provides a method whereby existing societies may come under the provisions of the act.

In pursuance to a resolution adopted by the board of directors of the defendant society, its president and secretary, on October 24, 1893, made application to the insurance superintendent of the State of Illinois for permission to continue business under the provisions of the act of 1893 and the following certificate shows that the society has been doing business under that act since October 30, 1894, to-wit:

"Springfield, December 15, 1903.

"I, Wm. R. Vredenburgh, insurance superintendent, do hereby certify that the Modern Woodmen of America was incorporated May 5, 1884, and that it complied with the provisions of the act entitled 'An Act to provide for the organization and management of fraternal beneficiary societies for the purpose of furnishing life indemnity or pecuniary benefits to beneficiaries of deceased members or accident or permanent indemnity disability to members thereof, and to control such societies of this State and of other States doing business in this State, and providing and fixing the punishment for violation of the provisions thereof, and to repeal all laws now existing which conflict herewith.' Approved and in force June 22, 1893, on October 30th, 1904.

"I further certify that said society has continually complied with provisions of the above act and is authorized to transact business now under said act.

"*In Witness Whereof*, I hereunto subscribe my name and affix the seal of my office at Springfield, the day and year first above written.

(SEAL)                    "WM. R. VREDENBURGH,

"Insurance Superintendent."

The certificate of the insurance superintendent of the State of Missouri authorizing the society to do business in this State was read in evidence.

Section 4, 5 and 6 of the original charter of the society read as follows:

"4. The object for which this corporation is formed is for the purpose of furnishing life indemnity or pecuniary benefits to the widows, heirs or relatives by consanguinity or affinity, devisees or legatees of deceased members, or accident or permanent disability indemnity to members thereof. Its members shall not receive any money or profit, it being purely a secret society.

"5. The plan which shall be followed in carrying out the object is as follows, to-wit: By the organization of local camps and a head camp to be composed of its officers and delegates elected by the members of the local camps. The local camps to have stated meetings at least once a month and the head camp to meet at least once in two years.

"The funds for the payment of death losses or accident indemnity are to be realized from assessments on surviving members. The funds for the payment of the ordinary expenses of doing the business are to be realized by assessments on its members, thus creating a 'General Fund.' The funds collected to pay death losses or accident indemnity is known as the 'Benefit Fund' and can be appropriated for no other purpose. The local camps shall be subordinate to and shall report to the head camp. The head camp shall pay all losses from the benefit fund collected from the surviving members of the fraternity by the proper officers of the local camps and shall have same forwarded to the head camp and by its officers disbursed.

"6. The management of the aforesaid head camp shall be vested in a board of eleven directors, who are to be elected annually or every two years as may be determined at a regular meeting of the head camp."

The record shows that the head camp of the society revised its by-laws in 1899 and amended them in 1901. The following of its revised by-laws are pertinent to the issues:

"Sec. 3. Purposes. The purposes of this society shall be the affording of substantial benefits to and promoting the fraternal relations among its members during life, and the furnishing of financial aid and indemnity to the beneficiaries or beneficial members (after the death of such beneficial members), in accordance with the articles of association, by-laws, rules and regulations of this society, and not inconsistent with laws of the State of Illinois."

"Sec. 32. Assessment Rates. Every beneficial member shall pay death benefit assessments, determined by his age at the date of his certificate, according to the following:

TABLE OF ASSESSMENT RATES.

| Age at Nearest Birthday | $500 | $1,000 | $2,000 | $3,000 |
|---|---|---|---|---|
| From 18 to 28 years ....$ | .25 | $ .40 | $ .80 | $1.20 |
| From 29 to 33 years .... | .25 | .45 | .85 | 1.30 |
| From 34 to 37 years .... | .25 | .45 | .90 | 1.35 |
| From 38 to 39 years .... | .30 | .50 | .95 | 1.45 |
| From 40 to 41 years .... | .30 | .50 | 1.00 | 1.50 |
| From 42 to 43 years .... | .30 | .55 | 1.05 | —— |
| From 44 to 45 years .... | .35 | .55 | 1.10 | —— |

"Sec. 24. Adoption of candidate. When Benefit Certificate Takes Effect.—Upon receipt of benefit certificate, the local clerk shall notify the candidate and he shall be adopted by the camp at the next or some regular or special meeting occurring at the camp hall within

113 app—3

sixty days after the issuance of such certificate, but such certificate shall not be in force or effect until said adoption ceremony shall have been performed, nor shall the adoption of such member take place until the benefit certificate shall be in the hands of the camp clerk."

"Sec. 34. No Waiver of Any Prerequisite.—No officer of this society, nor any local camp or officer thereof, is authorized or permitted to waive any of the provisions of these laws, or of any other laws of this society which relates to the substance of the contract for the payment of the benefits between the member and the society, whether the same be now in force or hereafter enacted."

"Chapter XLII.

"CLERK.

"Sec. 260. Shall keep Accounts.—The clerk shall keep the record and accounts of the local camp, and shall carry on the correspondence thereof.

"Sec. 261. Shall receipt for moneys and Pay to Banker.—He shall receive and receipt for all moneys paid in accordance with the provisions of these laws, and shall pay over all moneys by him so received to the banker as often as each regular meeting of his camp, taking the receipt of the banker therefor. . . .

"Sec. 270. Shall Remit Benefit Fund.—He shall, as soon as notified by the head clerk that an assessment has been called for by the board of directors, remit to the head clerk by bank draft, postoffice money order, or express order, payable to the order to the head banker, the deposit in the benefit fund in the hands of the camp banker, to-wit, all benefit funds derived from the payment of one assessment from each beneficial member in good standing, and all arrearages, and shall send therewith a pass report showing the name of every neighbor not in good standing, and such data and information as may be called for by the head clerk, or indicated on the blanks supplied by him.

"Sec. 271. Clerk Declared to be Agent of Local Camp.—The clerk of the local camp is hereby made and declared to be the agent of such camp, and not the agent of the head camp, and no act or omission on his part shall have the effect of creating a liability on the part of this society, or of waiving any right or immunity belonging to it.

"Sec. 272. Clerk's Bond.—He shall be required to give a bond in such sum as may be provided by the by-laws of his camp, conditioned upon the faithful performance of his duties."

Section 21 of the by-laws provides that all applicants for beneficiary membership are required to undergo a medical examination by the camp physician. If recommended by him, the examination is then submitted to the head physician of the district in which the camp is located and must be approved by him before a beneficiary certificate can be issued.

Section 43 of the by-laws prescribes the form and contents of the benefit certificate that may be issued by the society. It contains the following provisions pertinent to the issues in this case:

"1. That the application for membership in this society made by said member, a copy of which is hereto attached and made part hereof, together with the report of the medical examiner, which is on file in the office of the head clerk, and is hereby referred to and made a part of this contract, is true in all respects, and that the literal truth of such application, and each and every part thereof, shall be held to be a strict warranty to form the only basis of the liability of this society to such member and to his beneficiaries or beneficiary, the same as if fully set forth in this benefit certificate.

"2. That if said application shall not be literally true in each and every part thereof, then this benefit certificate shall, as to said member, his beneficiary, or beneficiaries, be absolutely null and void.

"3. This certificate is issued in consideraton of the warranties and agreements made by the person named in this certificate in his application to become a member of this society, and also in consideration of the payment made when adopted as a neighbor in prescribed form, and his agreement to pay all assessments and dues that may be levied during the time he shall remain a member of this society."

The certificate is required to be signed by the head consul and the head clerk. After their signature is appended the following:

"Member adopted and certificate delivered this ——— day of ———, 1——.

——————— Consul.    ——————— Clerk, ——— Camp. M. W. of A.

I hereby accept the above benefit certificate, and agree to all conditions therein contained.

—————————————————————."

The certificate was signed by the consul and the clerk, and the acceptance by Loyd.

Sections 24 and 33 of the by-laws are correctly set forth in the defendant's answer. The by-laws provide for a local camp, a state camp and a head camp. The State camp is composed of delegates elected from the local camps of a State having less than two hundred and fifty local camps. The following are some of the by-laws with respect to the head camp:

"Sec. 77. Head Camps Defined.—When in regular or special session assembled, the head camp shall be composed of its elective officers, its general attorney, editor and standing committees, and the delegates last elected by the various state camps, as hereinafter stated. *Provided, however,* that the members of standing committees shall not have the right to vote unless they be duly elected delegates to the head camp.

"Sec. 78. Powers of Head Camp as Deliberative Body.—The head camp as defined in section 77 hereof, is the law making body of this society and at its regular

biennial meetings, as hereinafter provided, and at any special meeting called in accordance with the provisions of these by-laws, shall enact such laws as shall be deemed by the members of that body for the best interest of the society.

"Sec. 79. Meaning of term 'Head Camp' When Not in Session.—Except when in session, either in regular or special meeting, as provided in section 77 hereof, the term 'head camp' shall be construed to mean this society, as represented by the head consul, head clerk and board of directors. . . .

"Sec. 84. Number of delegates.—Rate of Representation.—Each State and territory, within the jurisdiction defined in section 4 hereof, shall be entitled to one delegate at large, and in addition thereto, one delegate for each one thousand members, or major fraction of such number, belonging to camps located within such State or territory."

The territory within the jurisdiction of the camp as defined by section 4 of the by-laws includes the State of Illinois, and Missouri and twenty-seven other States, excluding large cities and including the Indian Territory. There is no substantial evidence that any of the officers of the society so conducted themselves with respect to the claim of the plaintiff under the benefit certificate sued on after the loss had occurred as to estop the defendant from setting up the defense pleaded in its answer.

BLAND, P. J. (after stating the facts).—In Baltzell v. M. W. of A., 98 Mo. App. 153, the Kansas City Court of Appeals held that the defendant was not a fraternal benefit society for the reason it was not required to do business under a lodge system with ritualistic form of work and a representative form of government. -The record in the Baltzell case shows the society was incorporated under the laws of Illinois of 1883 but did not show the act of 1893 or that the society had been per-

mitted to do business under the later act as a fraternal benefit society, nor did the record show it had adopted by-laws, under the provisions of which it was doing business under the lodge system with ritualistic form of work and a representative form of government and for these reasons is not authority in this case.

Our statute in respect to fraternal benefit societies (sec. 1408, R. S. 1899), defines fraternal benefit societies in the exact language of the Illinois statute of 1893 and since by said section 1408, foreign benefit societies are placed upon the same footing as domestic ones, when licensed to do business in this State [Hudnall v. M. W. of A., 103 Mo. App. 356, 77. S. W. 84], it only remains on this branch of the case to inquire whether or not the defendant is a fraternal benefit society as defined by both the Missouri and the Illinois statutes. It has a lodge system with ritualistic form of work and a representative form of government and is carried on for the sole benefit of its members and their beneficiaries and not for profit, and hence fills every term of the definition of a fraternal benefit society. But it is contended by respondent that its charter is broader than the statute in that its charter authorizes it to issue benefit certificates for the benefit of legatees of its members. The original charter so provides and so does the act of 1883 under which the defendant was incorporated. But by accepting the provisions of the act of 1893 and by being authorized to do business under that act, the exercise of its charter powers are restricted to issuing benefit certificates to the class of beneficiaries named in the act. Legatees not being named as one of the class so much of defendant's charter as authorized insurance for the benefit of legatees was abrogated by the society accepting the provisions of the act of 1893, for its charter powers are necessarily restricted to the authority conferred by that act. That act provides for the payment of death benefits to families, heirs, blood relatives, affianced husbands or affianced wives or to persons dependent upon the mem-

ber, the same class designated in the Missouri law. But
if other classes were designated in the Illinois act in its
Missouri business, the defendant being on the same foot-
ing as domestic fraternal societies, could not make any
class of persons beneficiaries not named in the Missouri
law. And we conclude that under the facts shown by
the record, there is not a shadow of a doubt that the de-
fendant is a fraternal beneficiary society and as such,
exempt from the general insurance laws of the State.

2. Did the certificate of insurance sued on become
a binding contract? is the next important question for
consideration. The application for the insurance and
the by-laws of the order are by express agreement, made
a part of the contract of insurance and are therefore as
binding upon both parties to the certificate as if they
had been bodily incorporated in it. As a condition pre-
cedent to the delivery and taking effect of the certificate
as a valid and binding contract, it was agreed and so
stipulated in the by-laws that James W. Loyd should be
adopted into the local camp and there was no way pro-
vided by which Loyd could become a member of the so-
ciety except by being inducted into the order through the
initiatory service and by taking upon himself the obli-
gations required by the rules and laws of the society.
This was as necessary to constitute him a member as is
baptism necessary to induct one into the Christian
Church. The condition, therefore, that he should be
adopted into the order before receiving a benefit certifi-
cate, was not a mere form or non-essential requirement,
but was necessary one under the charter of the society.
Loyd could not be qualified to become a holder of a bene-
fit certificate unless he was a member and he could not
be a member until he was adopted. But respondent con-
tends that the initiatory ceremonies were waived in
Loyd's case. There is nothing in the record to show or
tending to show a waiver. What it does show is that three
officers of the local camp agreed to deliver the certificate
and caused it to be done in violation of the by-laws of

the order and if their conduct should be upheld, it would thwart the very purposes and objects of the society by sanctioning the issuance of benefit certificates to non-members. It was no more competent for these officers to sign and deliver the certificate to Loyd prior to his adoption into the camp than it would have been competent for a minister of the Baptist Church to have received him into that ancient Christian denomination without baptism by immersion. Loyd is conclusively presumed to have known the by-laws, for they are a part of his benefit certificate. He knew the officers who attempted the waiver, if it may be called a waiver, were going beyond the scope of their authority; that they could not waive his adoption as a condition precedent to his right to receive the certificate. Knowing these facts, his beneficiary is not in a situation to set up the waiver for no one can bind a principal by an act of an agent which he knew at the time the agent had no authority to perform.

The case of Lavin v. A. O. U. W., 104 Mo. App. 1, 78 S. W. 325, and cases cited therein settle this contention against respondent and settles as well, that under the uncontradicted evidence in the case, the certificate sued on never became a binding contract and that no right to recover existed. The judgment is reversed. *Goode, J.,* and *Nortoni, J.,* concur.