LETTIE R. DAFFRON, as Administratrix of the Estate of NORVELL C. DAFFRON, Deceased, and JESSIE J. DAFFRON, JOHN L. DAFFRON and GLADYS G. DAFFRON, Minors, by LETTIE R. DAFFRON, Guardian and Curator, Respondents, v. THE MODERN WOODMEN OF AMERICA, Appellant.

Springfield Court of Appeals, May 19, 1915.

1. APPEAL AND ERROR: New Trial: Grounds for: Burden of Proof. Appeal by defendant in whose favor judgment was rendered, from an order sustaining plaintiff's motion for a new trial. The grounds specified in the order failing to justify same, the burden of justifying the action of the trial court rests on the party who obtained the new trial and he must point out errors alleged to have been committed in the trial other than those mentioned in the order.

2. ———: ———: Grounds Specified in Granting: Presumptions. Where the trial court specifies reasons for granting a new trial, it is presumed that all other grounds mentioned in the motion were overruled.

3. INSURANCE: Fraternal Benefit Societies: Age Limit of Insured: Evidence. Action to recover on a fraternal benefit certificate. Evidence as to the age of the insured at the time he joined the defendant association considered to show that he was, at that time, over forty-five years old, the age limit for applicants.

Daffron v. M. W. A.

4. ———: ———: **Contract: What Constitutes.** The contract entered into between a fraternal benefit society and its applicants, consists of the application, certificate and by-laws.

5. ———: ———: **Statements of Applicant for Membership: Untrue Statements Nullify Effect of Contract.** Statements and answers made by an applicant for membership to a fraternal benefit society are considered as warranties and if such statements are untrue, neither the applicant nor his beneficiaries have any rights under the certificate.

6. ———: ———: **Knowledge Imputed to Applicant: Special Privileges.** An applicant for membership in a fraternal benefit society, which places certain restrictions on its members and officers, must take notice thereof. He is conclusively presumed to know the provisions of his contract and that he enters as one of a class and no officer has authority to give him special privileges, such as a waiver of the time limits for applicants.

7. ———: ———: **Limitations of Powers of Officers: Waiver: Estoppel.** The local secretary of a fraternal benefit society and the deputy head consul waived the age limit in the case of an applicant for membership. This did not bind the organization by estoppel, as the act was without authority under the by-laws and was not ratified.

8. ———: ———: ———: **By-Laws.** The officers of a fraternal benefit society are restricted in their powers by the by-laws and rules of the society made by the membership. They have no power to alter or set aside any by-law which affects the members in the nature of property rights and would work a change in the contract between the society and its members.

9. ———: ———: ———: **Void Acts.** The officers of a fraternal benefit society cannot admit to membership an applicant who is not eligible under the by-laws. Such an action would be a nullity.

10. ———: ———: ———: **Estoppel of Society.** Though officers of a fraternal benefit society have no power to waive the provisions contained in the by-laws to the effect that applicants over the age of forty-five years shall be ineligible to membership, yet if such officers have repeatedly done this and continue to violate such provision so as to charge the society with notice and the society fails to act with respect thereto, such age limit provision may be waived by estoppel. This, not because the officers had made a new rule that would be binding, but because the membership, by acquiescence and nonaction, with knowledge, changed the rule with respect to age.

11. **ESTOPPEL: When Not Invokable.** Estoppel cannot be invoked by one who has in no way been misled.

12. **INSURANCE: Fraternal Benefit Society: Officers' Statements: Estoppel of Society: What Not.** An applicant for membership to a fraternal benefit society stated to one of the officers thereof that there was some doubt as to his age and discussed the matter pro and con with the officer. The officer stated that if the applicant was telling the truth he was acceptable and his application was taken. This did not constitute an estoppel as against the society.

13. **WAIVER: What Necessary to Establish: Knowledge.** A waiver can exist only against one who has full knowledge of the facts.

14. **PROBATE COURTS: Orders: May Be Shown How.** The approval of an order made by probate court need not necessarily appear from a formal entry of the order; it is sufficient if its approval be gathered from the whole record.

15. **GUARDIANS AND CURATORS: Settlement by Compromise with Insurance Society: Court's Approval: Statutory Provisions.** Curator of decedent's children gave receipt of premiums paid by such decedent as a member of defendant fraternal benefit society, the probate court approving same. *Held*, sufficient under Sec. 423, R. S. 1909, to relieve defendant society from liability under the policy.

Appeal from Wayne County Circuit Court.—*Hon. E. M. Dearing*, Judge.

REVERSED AND REMANDED (*with directions*).

*Truman Plantz* and *Barbour & McDavid* for appellant.

*S. R. Durham* for respondents.

STATEMENT.—This is an action brought to recover on a fraternal benefit certificate issued by the defendant (appellant) on the life of John W. Daffron which had been made payable to the wife of the insured but in which prior to his death his minor children were substituted as beneficiaries. No point is made as to the change of beneficiaries; or that the application originally acted upon became a part of the certificate after-

ward issued and now in suit. One of the minor children having died, this suit was brought by Lettie R. Daffron as administratrix of the estate of the deceased child, and as guardian and curator of the other minor children of the insured.

The petition is in two counts, the first being to recover two thousand dollars on the certificate, and the second being for the purpose of cancelling a receipt, discharge or compromise settlement made some time prior to the institution of this suit by Joseph F. Lindsay who was at the time it was given the guardian and curator of the minor children named in the certificate.

For aught that appears in the record the case was without objection tried and treated as a law case throughout, and evidence as to all the issues was offered to the jury.

The verdict was in favor of the defendant.

The plaintiffs filed a motion for a new trial, assigning ten grounds of error, one of which is as follows: ''Because the court erred in excluding the evidence offered by the plaintiffs for the purpose of establishing an estoppel of the defendant to defend on the ground of misrepresentation of the age of John W. Daffron.'' Another was to the effect that the trial court erred in refusing instructions offered by the plaintiffs on the theory of waiver and estoppel.

The court sustained the motion for a new trial on the following grounds: ''The court sustains the motion for a new trial, for the reason that the court committed error in rejecting testimony offered on the part of the plaintiffs on the plea of waiver and estoppel and in refusing instructions asked by plaintiffs upon said plea.''

As the first count of the petition, the answer, and the reply, raised the propositions on which the trial court sustained the motion for a new trial, we will first discuss this phase of the case.

As appellant has fairly summarized the pleadings in this connection in its brief, we hereby adopt its statement with reference thereto:

"The petition may be considered as containing two counts, the first of which declares on a benefit certificate alleging in appropriate terms its issuance by the defendant, setting it forth *in haec verba,* averring full and complete compliance with all its terms and provisions, as also the by-laws of defendant society. This count of the petition further alleges· that all dues were paid and that John W. Daffron was a member of defendant society in good standing at the time of his death, August 18, 1908; that the plaintiff caused death proofs to be made up and forwarded to defendant; and that payment of the face value of the policy—$2000—was demanded of defendant and refused, and judgment is prayed in that amount with interest. . . ."

**Petition.**

"The defendant, in its answer, admits the issuance of the original certificate, the surrender thereof and the issuance in lieu of it of the certificate sued on with beneficiaries as alleged in plaintiff's petition. It admits the death of John W. Daffron, that all assessments were by him paid and that death proofs were filed with the defendant by the plaintiffs. It admits also that it has denied, and now denies liability on said certificate and that it has refused and now refuses to pay the beneficiaries named therein the amount thereof. It denies that John W. Daffron was, at the time of his death, or any of the times mentioned in plaintiffs' petition, a member in good standing of this defendant society and avers that the certificate sued on was issued as upon the original application and with the express understanding that the condition recited in said original application continued in full force and effect as conditions of said new certificate.

**Answer.**

"The defendant, further answering, then denies all allegations of said petition, except as therein admitted to be true. Proceeding, the answers sets up affirmative grounds of defense, as follows:

"In its first affirmative ground of defense, it is alleged that in said application, which, by its own terms, is made a part of the contract and of the benefit certificate, as issued, John W. Daffron warranted and agreed that he was born on the 27th day of December, 1853, and that he was at the time he made his application, between forty-four and forty-five years of age, and this count of the answer avers that said answer was false and untrue, and that in truth and fact the said Daffron was born in the year 1851 or 1852, and was at the time of his making such application, and of the issuance of the certificate sued on, over forty-five years of age, and by reason of said false statement and breach of warranty, in respect of the matters above mentioned, said benefit certificate sued on became, was, and is null and void. . . .

"In the fourth affirmative ground of defense, contained in said answer, are set forth various sections of the by-laws of the defendant society, relating particularly to qualifications for membership, the age limit therefor, the assessment rates at various ages and the time when certificates shall become operative. It is then averred in this fourth count, that Daffron was not at the time he made his application qualified to become a member of this society in that he was at that date past forty-five years of age and therefore ineligible, and that by reason thereof no liability arose against this defendant for the payment of the benefits. That Daffron did not possess the qualifications prescribed under the by-laws for an applicant, in that he was over forty-five years of age at the date thereof, and that by reason of this fact his certificate herein sued on has been null and void at all times, and that all payments made by way of assessments, were under the contract

and agreement and under the by-laws of the society forfeited absolutely to the defendant society. . . .

"The plaintiffs by way of replication denied specifically under four different subheads that John W. Daffron made any false answer in respect of the date of his birth or as to his age; deny that he

Reply.

was over age at the date when he became a member and deny that he thereby forfeited all rights under said certificate and all assessments paid thereon. Further replying, the plaintiffs aver that 'every answer given in his said application by the said Daffron and every statement, representation, and warranty made by him therein for membership was a true and correct answer, statement, representation and warranty.'

"The replication, proceeding, pleads waiver and estoppel against the defendant in that it alleges that one J. W. Cannon was a Deputy Head Consul of defendant society, and was at Piedmont, Missouri, and organized a camp for the defendant, and in doing so, took the application of John W. Daffron, on which the policy now in question was issued. That the said Cannon was by Daffron made fully acquainted with all the facts touching the question of the age of the applicant. That he was made acquainted with the fact that there was some question in respect of his age and that the said Cannon as the agent of said society, after hearing the facts found and determined that the applicant was born December 27, 1853, and that his knowledge and conduct and finding were imputable to the defendant, and that it is thereby estopped from now asserting the forfeiture of said certificate on account of such statement in respect of the applicant's age and date of birth. It further avers that the clerk of the local camp at Piedmont, Missouri, one T. E. Daffron, was likewise familiar with all the facts relating to the dispute and difference in respect of the age of John W. Daffron, and that with that knowledge he accepted dues of the

said John W. Daffron, and that by reason thereof the defendant is now estopped from claiming a forfeiture by reason of the statement in respect of age and date of birth of the applicant. . . ."

The defendant is a fraternal benefit society and has fully complied with our laws relating to such associations. It has certain by-laws governing and entering into the contract of insurance, binding on the applicant and the beneficiaries named in the certificate, some of which are as follows:

"Sec. 8.   Rights of a Beneficial Member.—Every beneficial member shall be entitled to all the rights and privileges of the order while in good standing, and upon his death (occurring while in good standing) the beneficiary or beneficiaries named in the benefit certificate shall be entitled to participate in the benefit fund of this order to an amount not exceeding the amount stated in his said certificate; provided, however, that all the conditions and requirements contained in his benefit certificate, and in the by-laws of this society, as the same now exist, or may be hereafter modified, amended or enacted, shall have been fully observed and complied with."

"Sec. 196.   May Appoint and Remove.—The Head Consul shall have authority to appoint and remove Deputy Head Consuls and prescribe rules for their government."

"Sec. 200.  Duties of Deputy Head Consuls.—They shall have authority to organize new camps within their respective territories; provided, however, that a new camp shall not be organized with less than fifteen accepted applicants for beneficial membership, whose petition for a charter shall have been duly approved."

Section 36 of the by-laws is as follows:

"Sec. 36.   No Waiver of any Prerequisite.—No officer of this society, nor any local camp or officer thereof, is authorized or permitted to waive any of the provisions of these laws, or of any other laws of this

society which relate to the substance of the contract for the payment of benefits between the member and the society, whether the same be now in force or hereafter enacted.''

The by-laws specify certain duties to be performed by the Head Consul, one of which, pertinent here, is that he ''shall construe the laws of the society, and be the executive officer thereof.'' And he is given certain powers contained in the following section:

''Sec. 103.   May Grant Dispensations.—He may grant written dispensations for any purpose *except to admit a person to membership who is not eligible thereto under the laws of this society;* and provided, further, that he shall not have the power to do anything that will in any manner impair the contract of a beneficial member with this society.'' (Italics are ours.)

Section 271 of the by-laws is as follows:

''Sec. 271.   Clerk Declared to be Agent of Local Camp.—The clerk of a local camp is hereby made and declared to be the agent of such camp, and not the agent of the Head Camp, and no act or omission on his part shall have the effect of creating a liability on the part of this society, nor of waiving any right or immunity belonging to it.''

The contract of insurance as embodied in the application and certificate contains the following provisions:

''5.   I agree to make payment of all dues and assessments legally levied within the limit of time provided by the society's law, and to conform in all respects to the laws, rules, and usages of the society now in force, or which may hereafter be enacted and adopted by same; and that this application and the laws of this society shall form the sole basis of my admission to and membership therein, and of the benefit certificate to be issued me by said Modern Woodmen of America; that any untrue or fraudulent statement or answer made to the Camp Physician, or any conceal-

ment of facts, intentional or otherwise, in this application, or my being suspended or expelled from or voluntarily severing my connection with the society shall forfeit the rights of myself and that of my beneficiaries to any and all benefits and privileges therein or arising therefrom.''

''6. Do you fully understand the objects, organization, mode of government, and the laws of this society, and particularly that part of the laws defining the qualifications for and the restrictions upon its membership, and that providing for the forfeiture of indemnity for untrue statements or answers in an application for membership? Answer, Yes.''

''7. Do you further understand that the laws of this society now in force, or hereafter enacted, enter into and become a part of every contract of indemnity by and between the members of the society, and govern all rights thereunder? Answer, Yes.''

''Applicant please note this clause.

''I have verified each of the foregoing answers and statements from 1 to 24, both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete, and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers, and I hereby constitute the officers of the local camp and of the Modern Woodmen of America who have aided in making this application my agents for such purpose. I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and the Modern Woodmen of America, and are offered by me as a consideration for the contract applied for, and hereby made a part of any benefit certificate that may be issued on this application, and shall be deemed and taken as a part of such certificate. That this application may be referred to in said benefit certificate as the basis

thereof, and that they shall be construed together as one entire contract; and I further agree that if any answer or statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the laws of said Modern Woodmen of America, whether now in force or hereafter adopted, that my benefit certificate shall be void.''

The signed application contained also the following statement:

''2. I was born in the State of Georgia on the 27th day of December, 1853, and am now between forty-four and forty-five years of age.''

The application was witnessed and recommended by J. W. Cannon, Deputy Head Consul, on May 3, 1898, and was forwarded to the home office of the society at Rock Island, Illinois, and bears an indorsement thereon as having been received at that office on May 11, 1898.

It will be borne in mind that Cannon was at Piedmont organizing a new camp, and in getting the required number of applications to send in so as to procure a charter he had talked to and solicited John W. Daffron. They had evidently been talking over the question of Daffron's eligibility and went to the office of Mr. Durham (the attorney for respondents herein). At the trial the following offer was made which is now relied on to establish waiver and estoppel:

''Mr. Durham: I now propose to show that at the time of the making of the application for the insurance sued on in this case, the Deputy Head Consul, J. W. Cannon, and John W. Daffron came to the office of S. R. Durham, at Piedmont, Missouri, some time in the latter part of May, 1898, and that Daffron made the statement, or he asked me the question, 'Cannon wants me to join the lodge, and if I am eligible, I want to join—there is some question as to my exact age—there is a record my stepmother has that shows that I was born in 1852, but I have an aunt who told me that the

record was not correct, and that she knew my exact age, that she lived right by us when I was born, and had a child born in the same month, and she knew I was born in 1853—I have always thought her recollection was the best and considered that to be my true age.' Mr. Cannon says to me, '*If Daffron is telling the facts, he is acceptable.*' And he says, '*We will accept him. We will take your application.*' '' (Italics are ours.)

The court permitted the introduction of all the above offer except the last three lines which we have written in *Italics.* But in the instructions the court withdrew from the jury the consideration of any of the evidence relative to waiver and estoppel.

The record also shows that the secretary of the local camp knew there had been a question discussed as to whether Daffron was born in 1852 or 1853.

There is no evidence in the record, however, that any of the executive or home officers of the society ever heard of any such question until the proofs of death came in wherein it appeared by affidavits. The affidavit of the brother of the applicant stated that Daffron was born December 22, 1852, as shown by the record in the family Bible. The affidavit of Lettie R. Daffron, widow of the insured, stated that he was born on December 22, 1850—as she had been told by him. The record in the family Bible when introduced in evidence at the trial showed that John W. Daffron was born December 22, 1852; that his sister, Mary E. Daffron, was born May 24, 1851; and that his sister, Malinda A. Daffron, was born February 8, 1854. It will be noted that if the insured was born in 1853, as stated in his application, his birth must have occurred less than two months prior to the birth of his sister Malinda. There is no evidence that Cannon ever saw the record in the Bible, or that anything was said to him other than has been detailed above in his conversation in Mr. Durham's presence.

There is no evidence that the society or any of its officers had ever before admitted applicants who were over forty-five years of age.

## OPINION.

FARRINGTON, J.—I. Before going into the discussion of the question as to whether the trial court was justified in granting a new trial on the grounds assigned, it may be well to observe that an examination of the record does not reveal any other ground upon which such order should be sustained. The respondents assumed the burden of pointing out errors alleged to have been committed against them in the trial court other than those mentioned in the order which would justify the action of the court in granting a new trial. [Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 114 S. W. 1057; Millar v. Madison Car Co., 130 Mo. 517, 31 S. W. 574.]

Where the trial court specifies reasons for granting a new trial we will presume that it overruled all other grounds mentioned in the motion.    [Jiner v. Jiner, 182 Mo. App. 153, 168 S. W. 231.]

Finding, as we do, that there was nothing else that would justify the trial court in sustaining the motion for a new trial, we will take up the question as to whether the trial court's reasons for granting a new trial can be sustained upon the record before us.

We start with the fact established that John W. Daffron was on the day he signed the application to become a member over forty-five years of age, because there is sufficient evidence to support the jury in finding that to be a fact—and a reading of the record convinces us that the conclusion the jury reached in this particular is correct.

On the facts as hereinbefore detailed, under the law, did the defendant society estop itself from refusing payment on the benefit certificate on the ground that

it had waived its constitutional requirement that its applicants must be under forty-five years of age? And to this we answer, No, *first,* because, under the evidence neither the local secretary nor Cannon were officers having power to waive or to estop the society; *second,* because there is no evidence that the knowledge which came to Cannon and to the secretary of the local camp that there was a question as to Daffron's age ever reached the executive officers of the society until after the death of the applicant; *third,* because, under the by-laws of the society, as hereinbefore set forth, the Head Consul is denied the power to admit a person to membership who is not eligible thereto under the laws of the society; and *fourth,* because the statements made—relied upon as a waiver and estoppel—if made to officers who had authority to bind the society, did not in law amount to a waiver, nor is there any evidence that Daffron was misled to his disadvantage.

A few general principles should be kept in mind.

The contract entered into between a fraternal benefit society and its applicants consists of the application, certificate and by-laws.    [Loyd v. M. W. A., 113 Mo. App. 19, 87 S. W. 530; Pearson v. Knight Templars and Masons Indemnity Co., 114 Mo. App. 283, 89 S. W. 588; 1 Bacon on Ben. Soc. and Life Ins. (3 Ed.), sec. 161; Brittenham v. W. O. W., 180 Mo. App. 1. c. 534, 167 S. W. 587.]

The law construes statements and answers made by an applicant in this character of insurance as warranties, and if the statements made are untrue, neither the applicant nor his beneficiaries have any rights under the certificate.    [Aloe v. Mutual Reserve Life Assn., 147 Mo. 1. c. 575, 49 S. W. 553; Claver v. W. O. W., 152 Mo. App. 1. c. 164, 133 S. W. 153; Pacific Mut. L. Ins. Co. v. Glaser, 245 Mo. 1. c. 387, 150 S. W. 549.] These cases announce the general rule.

Where the contract of insurance puts certain limitations on its members and on the officers of the society,

of which an applicant must take notice and knowing that the society to which he is applying for membership is democratic in government he must know that he can only come in as one of a class, and, as was said in the case of Galvin v. Knights of Father Matthew, 169 Mo. App. 496, 155 S. W. 45, "is chargeable with knowledge that no officer has authority to offer him special privileges." He is conclusively presumed to know the provisions of his contract. [Day v. Supreme Forest, Woodmen Circle, 174 Mo. App. 1. c. 271, 156 S. W. 271.]

We will first dispose of the secretary of the local camp at Piedmont. He knew enough to be held (at least constructively) to know that Daffron was over forty-five years of age when he applied for membership in the society. With the provision in the by-laws (Sec. 36) that no officer of the society nor any local camp officer can waive any provisions or laws relating to the substance of the contract, and the provision in section 271, declaring the local secretary to be the agent of the local and not of the head camp and with no power to waive any rights or immunities of the head camp, we cannot see how the knowledge of the local secretary as to the true age of the applicant would be binding on the society. To ascertain the age of applicants and members does not fall within the scope of the duties of a secretary of a local camp and is therefore not a subject upon which he is to pass. This condition takes this case out of the rule laid down in the case of Modern Woodmen of America v. Angle, 127 Mo. App. 94, 104 S. W. 297, wherein it is very properly held that while Doctor Crewdson was the local camp physician, the duties he was performing with reference to the applicant were necessarily performed for the society, because it was for the society that the examination was to be made (and the report thereof forwarded), and being the agent of the society for that purpose he was necessarily delegated the power to de-

termine for the society what questions the applicant was to answer were material.

There are numerous cases in this State holding, under contracts similar to the provisions of the one in suit, that the act or conduct of the local camp or lodge officer will not work an estoppel or waiver as to the society unless the act or conduct of the local camp officer is one that is done while transacting some business which is necessarily done for the society, or unless his conduct in respect to what he is doing has fallen under the eye or has come to the knowledge of the head officers to such an extent that by nonaction and acquiescence the law will presume that such conduct is the manner in which the head officers representing the society within their prescribed powers approve and adopt; and in such case the estoppel and waiver is not placed on the act of the local officer, but, after all, is attributed to the act or conduct of the head officers. [Boyce v. The Royal Circle, 99 Mo. App. 349, 73 S. W. 300; Lavin v. A. O. U. W., 104 Mo. App. l. c. 19, 78 S. W. 325; Clair v. Royal Arcanum, 172 Mo. App. l. c. 717, 155 S. W. 892; Chadwick v. Order of Triple Alliance, 56 Mo. App. 463; Burke v. A. O. U. W., 136 Mo. App. l. c. 457, 118 S. W. 493; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Knode v. M. W. A., 171 Mo. App. l. c. 383, 384, 157 S. W. 818; Day v. Supreme Forest, Woodmen Circle, 174 Mo. App. 260, 156 S. W. 721; Zahm v. Royal Fraternal Union, 154 Mo. App. 70, 133 S. W. 374.] In all these cases the question of waiver and estoppel came up concerning acts and conduct taking place after a valid certificate had been issued and was in force, and the question was whether such valid certificate had been forfeited. In the cases of Modern Woodmen of America v. Angle, 127 Mo. App. 94, 104 S. W. 297; Shotliff v. Modern Woodmen of America, 100 Mo. App. 138, 149, 73 S. W. 326; and Floyd v. Modern Woodmen of America, 166 Mo. App. 166, 148 S. W. 178, the question arose on a misrepresentation made

by the applicant as to prior matters; yet, in these cases the agent who waived for the society was necessarily acting for the society. The provisions, warranties or conditions which they waived were necessarily such as had been and could be delegated to the agent to pass upon, by and for the society. In our case there is nothing to warrant a finding that the local secretary had any power whatever to pass upon the age of an applicant.

With reference to Cannon, the Deputy Head Consul: His duties are set forth in the by-laws, which are known to the applicant, and in none of the duties imposed upon or delegated to him can be found any right, privilege or power to pass upon the age of an applicant. His duties, as detailed in section 200 of the by-laws hereinbefore set forth, are to organize new camps provided there are fifteen *accepted applicants*. Accepted by whom? This provision can refer to none save the officers of the head camp; they are to *accept* the applicants; otherwise, the Deputy Head Consul could pass upon the physical condition of the applicants, as well as all other requirements.

Besides, it is not contemplated that anyone shall pass on or guess off the age of applicants. It is not the ultimate *fact* of an applicant's age that is to be passed upon by anyone under this scheme of insurance; but it is his application which contains a statement of his age that must be passed upon to see if it conforms to the requirements of the society's laws, and that is to be done by the head camp after the organizer has taken the application and sent it in. It would be a violent presumption to hold that the society ever delegated the power to one of its agents to pass upon the age of applicants. The requirement of the society as to age rests on *fact* and not on *opinion*.

But as to the powers of the Deputy Head Consul, let us look further into the by-laws. No one would seriously contend that the deputy would have more

power in this respect than his superior, the Head Consul who appointed him; yet we find that section 103 prohibits the Head Consul from admitting an applicant to membership who is not eligible, etc. And though it is held in the case of Shotliff v. Modern Woodmen of America, 100 Mo. App. l. c. 149, 73 S. W. 326, that section 34 of this society's by-laws (now section 36) applied only to completed contracts, the same could not be said of section 103 which provides specifically as to the *admission* of candidates.

It follows that the knowledge of the question as to Daffron's age having come to Cannon and the local secretary does not bring this case within the rule where waiver and estoppel has been applied to such defendants, because they were not acting in the capacity of agents for the society in the matter of determining or passing on age; nor is there any evidence that their knowledge ever came to the head officers.

Counsel for respondents however relies upon the case of Edmonds v. Modern Woodmen of America, 125 Mo. App. 214, 102 S. W. 601. We cannot agree with all that is said in that opinion in regard to the power of the head officers to waive the age limit for the society; nor do we think that the court that rendered that opinion has followed it in that respect. However that may be, the facts of that case bring the holding as to the necessity of knowledge of the head officers clearly within the rule heretofore discussed. In that case, not only did the change of date appear in different colored ink but also the changed date was a contradiction of the stated age of the applicant. The application had been for years in the hands of the head officers and they had copied their records so as to show that the knowledge of the date contained in the application came to them. Therefore, on the question of knowledge of the home officers that case is an authority for the appellant herein under the facts in our case.

The members of a fraternal benefit· society meet and pass by-laws and rules by which the members and those becoming members are to be governed. This, under the law, they have a right to do. The character of these organizations, if the benefits designed are to flow therefrom, necessarily require such rules of government and the observance thereof. Some of these by-laws relate to the conduct of members and the several local camps, while others relate to the very substance of the contract, which, when passed, become in the nature of property rights. Officers are provided for and elected by the membership, not for the purpose of creating property rights as between the members, because they reserve that to themselves as a body, but for the purpose of seeing that the conduct of the members and camps are in conformity with the rules and by-laws promulgated and adopted by the membership. To measure conduct, a certain authority to construe the rules and a certain amount of discretion is vested in and delegated to the head officers. Serving in this capacity such officers are acting for the society and their findings are then necessarily binding upon their principal. But where the creating body—the membership—expressly reserves to itself the making and determination of and construction of the rules relating to the "substance of the contract" or property right, any act of the officer in regard thereto is void and not binding on the society. The by-laws hereinbefore quoted in this opinion show that the membership has not delegated the power to its officers, high or low, to make rules—either expressly, impliedly, or by waiver and estoppel, as to individuals or as to a class—that create property rights. It therefore follows that should the head officers attempt to take in an applicant who is expressly declared ineligible, their act in so doing would be a nullity.

190MA21

Now there might be a case where the society would
bind itself in this respect. For instance, if the head
officers had been making it a practice to take in ap-
plicants in violation of the by-laws who were above the
age limit, and this practice had been going on noto-
riously for such a length of time that the governing
body and the membership would be charged with notice
thereof and had failed to act with respect thereto, there
could be a waiver or estoppel enforced against the so-
ciety; but this would be, not because the officers had
made a rule, but on the theory that the membership had
by acquiescence and nonaction with knowledge made or
changed the rule with respect to age.

The identical question presented in this case was
decided by the Supreme Court of Massachusetts in the
case of McCoy v. Roman Catholic Mut. Ins. Co., 25 N.
E. 289, wherein the sole proposition discussed and de-
cided was whether the society would be bound to honor
a certificate issued to one who was above the age limit
when he applied, which fact as to age was known to
at least three of the controlling officers of the society,
and the proposition was answered in the negative.
That the law as declared in that case is the law of Mis-
souri is witnessesd by the case of Lavin v. A. O. U. W.,
104 Mo. App. 1, 19, 78 S. W. 325, decided by the St.
Louis Court of Appeals, in which the Massachusetts
case is cited with full approval. And we find that the
Kansas City Court of Appeals in the case of Galvin
v. Knights of Father Matthew, 169 Mo. App. 1. c. 509,
155 S. W. 45, also cited with approval and quoted from
the Massachusetts case. Hence there can be no doubt
of the approval of that case by the courts of our State
as it discussed and decided but one proposition. The
court in the Galvin case (the case last cited) used the
following language applicable here: "The rule thus
announced" referring to the rule announced in the
Massachusetts case, supra, "would be given applica-
tion here were we dealing with an instance in which an

attempt had been made to exempt an incoming member from an obligation common to all members and of the very essence of the insurance contract." [See, also, Boyce v. The Royal Circle, 99 Mo. App. l. c. 355, 73 S. W. 300; Borgraefe v. Knights of Honor, 22 Mo. App. l. c. 141; Harvey v. A. O. U. W., 50 Mo. App. l. c. 477; Burke v. A. O. U. W., 136 Mo. App. l. c. 457, 118 S. W. 493; Loyd v. M. W. A., 113 Mo. App. l. c. 40, 87 S. W. 530; Modern Woodmen of America v. Tevis, 117 Fed. 369; Modern Brotherhood of America v. Beshara, 142 Pac. 1014; Modern Woodmen of America v. International Trust Co., 136 Pac. 806.] We realize that some of the courts hold to the opposite view, notably the Supreme Court of Illinois (Wood v. Supreme Ruling of Fraternal Mystic Circle, 72 N. E. 783).

Lastly, would the conversation that took place between Daffron and Cannon, and Cannon's action in relation thereto, constitute a basis for waiver or estoppel, even though Cannon had authority to waive the age limit for the society? We think not. To summarize the evidence introduced as to this: Daffron is said to have stated: "Mr. Cannnon wants me to join the lodge and if I am eligible I want to join. There is some question as to my age. My stepmother has a record that shows I was born in 1852, but I do not accept that as correct, for the reason that my aunt tells me there is a mistake in it and that she claims to know my exact age. She said she lived right by us when I was born and had a child born in the same month and she knows my exact age and that I was born in 1853, and I have always thought it was correct. I have always considered my age as being born in 1853. I consider that to be my true age." Cannon said: "If Daffron is telling the facts, he is acceptable. We will accept him. We will take your application. We will take the age your aunt gives you as your true age." The evidence shows that whilst the applicant informed the agent as to a question that some one had raised about his age, he

did in fact determine it for himself as he told Cannon that the Bible record was not correct. He knew that Cannon made no investigation as to the merits of the two sources of information concerning his age, but accepted as true the one that Daffron accepted and said was true, preluding his acceptance with: "If Daffron is telling the facts." By his statement to the agent Daffron forestalled any inquiry by asserting that the Bible record was incorrect. His means of knowing his age was certainly equal if not superior to any available to the agent. There is no showing that Daffron was in any way misled; with this there could be no estoppel. [Modern Woodmen of America v. International Trust Co., 136 Pac. l. c. 810.] At most, the mistake was mutual. [2 Bacon on Ben. Soc. and Life Ins. (3 Ed.), sec. 424.] The applicant assumed that his age was as his aunt gave it, and if that was the truth he was acceptable. As to his age he assumed to have knowledge; that fact was found to be false, and hence recovery is precluded. [2 Bacon on Ben. Soc. and Life Ins. (3 Ed.), sec. 427 at page 1067.] A waiver can only exist where the party against whom it is claimed has full knowledge of the facts. [40 Cyc. 259.] Yet the applicant in this case knew that Cannon had only such knowledge of the facts as to his true age as Daffron saw fit to tell him. There is, however, in the record positive testimony that Daffron was in no way misled by the action of the defendant society. When he was seeking to have the beneficiaries changed (substituting his minor children instead of his wife) he had some trouble in getting his wife to consent thereto, and in talking of this with his brother, he said, referring to his wife, Lettie R. Daffron, that "he didn't care whether she gave up the policy or not for when he died they would likely look into it and he wouldn't get anything anyway, because he was too old when he joined the lodge."

II. Independent of any question of law govern-
ing this character of insurance, the defendant is re-
lieved of liability on this certificate on another ground.
Soon after the death of John W. Daffron, Joseph F.
Lindsay was duly appointed and qualified as the cu-
rator for the minor children of the deceased by the pro-
bate court of Wayne county. At that time he was the
representative of all the beneficiaries named in the cer-
tificate, and as such, he, with the assistance of Lettie
R. Daffron, widow of the deceased, and one of the plain-
tiffs herein, made up the necessary proof of death and
sent it to the defendant. This proof of death disclosed
that John W. Daffron was born in 1852, which made
him over forty-five years of age when he applied for
membership. On receipt of this proof the officers of
the defendant immediately denied liability and so noti-
fied the curator, giving him their reason. The curator
then consulted O. L. Munger, an attorney of Piedmont,
Missouri, as to the legal effect of Daffron's application
being made to this society after he was forty-five years
of age, and the curator and this attorney decided that
there was no liability on the certificate. The curator
then disclosed this information to the probate judge of
Wayne county, by letter, as follows:

"JOSEPH F. LINDSAY, Lawyer.

"Piedmont, Mo., March 5, 1909.

"Judge J. B. McGhee,

"Greenville, Mo.

"Dear Judge:

"I enclose you some correspondence in the mat-
ter of Daffron heirs estate. It speaks for itself. The
Insurance Company refused to pay the $2000. Mr.
Munger and I have gone over the legal features and
conclude the company is not liable.

"The company offers to return the amounts of the
premiums paid—$185.45, but you will see by their let-
ter of March 2nd inst. they want the probate court to
make an order approving of this basis for me as cu-

rator to settle with them, and to send them a certified copy of the order approving the same, which please send to me.

"Please file all these letters with the court files.

"Very truly,

"Jos. F. Lindsay."

Acting on this, the probate judge in vacation made an order authorizing the acceptance of the dues which had been paid by Daffron, amounting to $185.45, and made a certified copy of his order and had the same sent together with the certificate of insurance to the officers of the defendant, who, on receipt of the same, sent the curator the sum agreed upon as a settlement. The curator in his report to the probate court accounted for the $185.45, and the report specifically shows on its face that it was received in settlement of the claim under the certificate from the defendant, and further shows that this money was all that ever came into his hands for his wards. The order made in vacation authorizing a settlement, a copy of which was delivered to the defendant, was never actually spread upon the record and entered as an order during court time. However, the report of the curator, which was filed at a subsequent term of court and which was acted on by the court in session, shows that the curator had received the money from the defendant in compliance with the order made in vacation, and this report showing that state of facts was in court time approved by the probate court. Out of this $185.45 the court ordered the curator to pay the costs made in the curatorship, and made a further order that what was left—$146.30—be paid over to the mother of the children, Lettie R. Daffron, who had had allowed a claim in her favor for expense in maintaining and supporting the children. The curator, obeying this order of the probate court, distributed all of the $185.45, and his final settlement showing these things was approved by the probate court and the estate closed.

While the order authorizing the settlement, made in vacation, was never actually spread upon the record of the court in term time, the action of the probate court taken in term time with full information as to what had been done at the judge's direction in vacation clearly shows that such action was approved by the court and acted upon accordingly and that such action of the court ratified the order made in vacation during term time and amounted to no less than an order in term time. The approval of an order made by a probate court need not necessarily appear by a formal entry of the order; it is sufficient if its approval be gathered from the whole record. [Henry v. McKerlie, 78 Mo. l. c. 430, and cases cited; see, also, Ancell v. Bridge Co., 223 Mo. l. c. 227, 122 S. W. 709.] We hold, therefore, that the record is sufficient to meet the requirements of section 423, Revised Statutes 1909. The discharge was authorized by the probate court.

While it is alleged that the settlement was made through fraud and that the discharge and receipt given by the curator to the defendant was procured by overreaching him, there is no evidence whatever in the record tending to establish such charge. Section 452, Revised Statutes 1909, provides that when taken in good faith such a receipt as was given here shall be valid in the hands of persons taking it, and provides a remedy for an illegal or fraudulent receipt against the curator and his bondsmen. In this case there is nothing to show that the receipt was illegal or fraudulent, nor anything that it was not taken by the defendant in good faith.

Plaintiffs are clearly precluded from a recovery in this action.

We must therefore hold in this case, for the reasons herein appearing, that the evidence fails to show that the defendant society can be held to have made a contract with Daffron or is precluded from denying the validity of the certificate issued on account of waiver and estoppel. The action of the trial court in exclud-

ing this testimony at the trial was proper and its action in sustaining the motion for a new trial on the grounds stated in the order was erroneous. We further hold that the receipt and discharge given by the curator to defendant precludes a recovery.

It follows that the judgment must be reversed and the cause remanded with directions to the circuit court to set aside its order sustaining the motion for a new trial and enter judgment on the verdict. *Sturgis, J.*, concurs. *Robertson, P. J.*, concurs in the result for the reason that he is of the opinion that no testimony was offered or introduced justifying the submission of any question of waiver or estoppel concerning the age of the insured.

