[L. A. No. 7480.    In Bank.—October 31, 1923.]

MILTON MORRIS, a Minor, etc., Respondent, v. STANDARD OIL COMPANY (a Corporation), Appellant.

[1]    ATTORNEY AND CLIENT—JUDGMENT IN FAVOR OF MINOR—REMISSION BY ATTORNEY—SUFFICIENCY OF.—A written remission from a judgment in favor of a minor signed only by the attorney for the guardian *ad litem* is sufficient as to be binding upon the minor where there is no specific provision requiring the signature of the guardian *ad litem* and there is no suggestion of a lack of consent by such guardian; and such a remission filed with the clerk of the court complies with subdivision 1 of section 283 of the Code of Civil Procedure, which provides that an attorney shall have authority to bind his client in all steps of the action by his agreement filed with the clerk.

[2] Minors—Judgment—Remission—Duty of Court. — The primary duty of a court in reference to the remission of a judgment in favor of a minor is to guard the interests of the minor, and if an order or judgment is entered by the court with all the facts before it, after due judicial examination and adjudication, it will be binding upon the minor. It is only where it affirmatively appears that the court did not make any judicial inquiry as to whether the settlement or consent decree was for the benefit of the minor that it is not binding.

[3] Id.—Remission of Judgment—Approval by Court.—It cannot be said that the trial court did not give its approbation to the remission, signed only by the attorney, of a judgment in favor of a minor for damages for personal injuries, where the trial court, in passing upon a motion for a new trial, ordered that if the remission was made the motion for new trial would be denied. In deciding that the amount of judgment as remitted was the full value of the minor's claim for damages the court must necessarily have concluded that in executing the remission the attorney secured for the minor all that he was entitled to receive.

[4] Attorney and Client — Entry of Judgment — Subsequent Remission by Attorney on Motion for New Trial—Authority of Attorney.—Where the authority of the attorney is not disputed by the client he may after the entry of the judgment represent the client on a motion for a new trial and in the absence of fraud or mistake agree to the reduction of the judgment. The attorney's execution of the remission is merely a step in fixing the amount of the judgment; and subdivision 2 of section 283 of the Code of Civil Procedure has no application where a motion for a new trial has been made and is undetermined.

[5] Minors—Payment of Judgment—Section 1810b, Code of Civil Procedure — Construction of. — Section 1810b of the Code of Civil Procedure, to the effect that "if said judgment is for money, and there is no general guardian of said minor, one shall be appointed by the court, and the entire amount of the judgment shall be paid to and cared for by such general guardian, under the control of the court," is addressed to the payment of the judgment and not to matters preliminary thereto.

[6] Negligence — Personal Injuries to Minor—Verdict—Appeal— Evidence.—In this action for damages for personal injuries to a minor, in view of the evidence it cannot be held on appeal that the award of twelve thousand dollars is the result of passion or prejudice, or that, as defendant contends, "the amount allowed by

2. Power of trial court to cure an excessive verdict by requiring or permitting a reduction where true measure of damages not ascertainable by mere computation, note, 39 L. R. A. (N. S.) 1064.

the trial court after the reduction is to suggest at first blush that the amount is punitive in its nature."

[7] ID.—ORDER GRANTING NEW TRIAL—ATTACK UPON—UNSOUNDNESS OF CONTENTION.—In such an action, the plaintiff's contention that the order of the trial court, granting defendant's motion for a new trial subject to the condition that the motion would be denied if plaintiff remitted part of the judgment, was a nullity because it was not given in open court and not signed, cannot be sustained where the minute entry shows the order was made in open court, and it is not claimed that any steps were taken to have the minute entry amended, and where it does not appear that the point was otherwise made in the trial court.

[8] ID.—REDUCTION OF JUDGMENT BY COURT — JURISDICTION.—In such an action the trial court had jurisdiction to require the plaintiff to accept a reduced judgment or have a new trial, even though the case had been remitted by the appellate court for retrial on the sole issue of the amount of damages, and the jury on the retrial had fixed the same amount of damages as given by the first jury, since it was the duty of the trial court in considering the assignment of excessive damages on the motion for a new trial to review the evidence received on that issue and determine anew whether the amount awarded was justified.

[9] ID.—VERDICT—INTEREST.—In such an action interest on the judgment did not start to run until the question of excessiveness presented by the motion for a new trial had been determined.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Lawler & Degnan, Dorsey Whitelaw and George H. Moore for Appellant.

A. L. Hubbell for Respondent.

LAWLOR, J.—This is an action for damages for personal injuries, brought by the plaintiff, Milton Morris, a minor, by his guardian *ad litem*, J. M. Morris, father of plaintiff, against the Standard Oil Company, a corporation.

The facts in the case are these: Plaintiff's age at the time of the accident was thirteen years. He was riding a bicycle in a southerly direction on the west side of Imperial Avenue, north of Seventh Street, in the city of Calexico, Imperial

County. At the same time an automobile truck belonging to the defendant was being driven in a northerly direction on the east side of Imperial Avenue and turned, without warning, to the west at the intersection of Seventh Street and Imperial Avenue. The plaintiff was knocked down and the rear wheels of defendant's truck caught him, injuring him by tearing and lacerating his right leg and left ankle and foot.

On the trial the jury rendered a verdict in favor of plaintiff for twenty-five thousand dollars and on June 19, 1922, judgment was entered for that amount. On June 28, 1922, defendant gave notice of intention to move for a new trial, upon which motion the court ruled as follows on July 31, 1922:

"The said motion for a new trial is hereby granted on the grounds of excessive damages having been awarded by the jury and insufficiency of the evidence to justify the verdict; *provided, however,* that if plaintiff accepts within thirty days $12,000 damages in lieu of the amount awarded in the jury's verdict then the motion for a new trial is hereby denied."

Five days later respondent filed an "Election to Remit" in the following words:

"Comes now the above-named plaintiff by A. L. Hubbell his attorney, and elects to remit the sum of Thirteen Thousand Dollars from the judgment, rendered in favor of plaintiff on the 19th day of June, 1922, in accordance with order of court herein granting a new trial unless such remission is made.

"Plaintiff claims interest on said judgment from the 16th day of April, 1921, the date of judgment fixing plaintiff's right to a recovery of damages.

"Plaintiff stipulates and agrees to stay execution until the 20th day of August, 1922.

"A. L. Hubbell,
"Attorney for Plaintiff."

The defendant, on August 18, 1922, gave notice that it "hereby appeals to the Supreme Court of the State of California, from all of that portion of that certain order of said Superior Court made and entered in said action on July 31, 1922, denying defendant's motion for a new trial therein as follows: 'provided however, that if plaintiff accepts within

thirty days $12,000 damages in lieu of the amount awarded in the jury's verdict, then the motion for a new trial is hereby denied.' Defendant also hereby appeals to the Supreme Court of the State of California, from that certain judgment made and entered in said action on the 20th day of June, 1922, and from the whole thereof. Dated, August 18, 1922.''

There was a former appeal in the cause to the district court of appeal of the first appellate district, division number one (37 Cal. App. Dec. 213). On that trial respondent recovered judgment for the same amount—twenty-five thousand dollars—and an appeal was taken by appellant on two grounds—contributory negligence and excessive damages appearing to be given under the influence of passion or prejudice. The judgment was reversed on the ground of excessive damages and a petition for hearing in this court was granted. The opinion of the district court of appeal, except the last sentence thereof, was adopted in the decision herein and the judgment was reversed and a new trial granted with the following direction to the lower court:

''There is no necessity for again trying any of the issues of the case except that of the amount of damages. All the other issues are sufficiently disposed of in the foregoing opinion, and the evidence does not indicate any necessity for further investigation thereof in the court below.

''The judgment is reversed and the cause is remanded to the lower court for a new trial solely upon the issue of the amount of damages, with direction to that Court, upon the settlement of that issue, to render judgment in favor of the plaintiff for the amount so found.'' (*Morris* v. *Standard Oil Co.*, 188 Cal. 468 [205 Pac. 1073].)

Before considering appellant's final point that the amount of the judgment for twelve thousand dollars is still excessive within the meaning of subdivision 5, section 657 of the Code of Civil Procedure, we will dispose of its contention that: ''Either the 'judgment entered and docketed . . . on June 19, 1922, was final in the court in which it was pronounced when the remission was filed, or there was no judgment at all, because the motion for a new trial had been granted.'' It is argued that the signature of the attorney to the remission was not sufficient to bind respondent—that it should have been signed by the guardian *ad litem*, that

the court failed to approve the remission, and that an attorney has no authority to bind either a minor or an adult by joining in a modification of a judgment after it has been entered and recorded.

[1] With respect to the first point it is contended that the "remission which has the effect of waiving more than half of the judgment was not signed either by the guardian *ad litem,* or by any general guardian; it is signed only by the attorney for plaintiff"; and that the "plaintiff is a minor and unless the consent and agreement is absolutely binding on the plaintiff and his guardian, the plaintiff can at any time before he is twenty-one years of age repudiate the remission—even though the judgment as reduced were fully paid—without refunding a dollar of the judgment so paid. In so doing he could not even be embarrassed by the assertion that his guardian had signed the agreement or received the money. His guardian *ad litem* or a general guardian could procure the invalid remission and satisfaction to be annulled, dismiss the action and commence another, or proceed to a third trial and judgment in the present case. The defendant has the right to a final, binding adjudication." The guardian *ad litem* engaged the attorney. A guardian *ad litem* is: "A person appointed by a court to look after the interests of an infant when his property is involved in litigation. He manages the defense of an infant defendant, where there is no parent, or other guardian. . . . He is a species of attorney, whose duty is to prosecute for the infant's rights, and to bring those rights directly under the notice of the court. He can do nothing to the injury of the infant. His duty ends when the suit ends, when it is prosecuted to final judgment." (Anderson's Dictionary of Law, p. 498.) In *Beliveau* v. *Amoskeag Mfg. Co.,* 68 N. H. 225 [73 Am. St. Rep. 577, 44 L. R. A. 167, 40 Atl. 734], it was said: "The representative may, in the exercise of an undoubted authority, employ an attorney at law in the management and control of the suit . . . In such a case, the attorney becomes clothed with the ordinary powers pertaining to an attorney of record. . . . His authority is as extensive as it is in other cases, and the infant, through his representative, is bound by the attorney's acts within the ordinary scope of his authority the same as an adult would be, and has a like remedy against the attorney

for any abuse of such authority, express or implied." As
to the power of an attorney, as such, employed by the guard-
ian *ad litem* of an infant to prosecute an action for personal
injuries, the question arose in that case, whether the settle-
ment of the suit by the attorney was binding on the ward.
The court declared: "No recognizable distinction is believed
to exist between the case of an entry of judgment in regular
course by an attorney of a party *sui juris* and the case of a
like entry by an attorney properly employed by the repre-
sentative of an infant to conduct the suit. The authority
of attorneys of record to make such entries is always pre-
sumed, if nothing appears to the contrary, and when made
they are conclusive as between the parties, in the absence of
fraud or mistake." The authority of an attorney, whether
he represents an adult or a minor, extends to remission from
judgments. (*Mead* v. *Buckner,* 2 La. 282; *Case* v. *Hawkins,*
53 Miss. 702; *Picketts' Exrs.* v. *Ford,* 4 How. (Miss.) 246;
*Lamb* v. *Williams,* 6 Mod. 82 (1 Salk. 89); *Earl of Yar-
mouth* v. *Russell,* 2 Ld. Raym. 1142.) There is no statutory
requirement that there shall be formal consent by the client
to the remission, and the cases cited by appellant are to the
effect that when an attorney has full authority to represent
his client and it is not made to appear to the court that
the client in fact refused to give consent, the act of the
attorney will bind the client. (*Preston* v. *Hill,* 50 Cal. 43
[19 Am. Rep. 647]; *Trope* v. *Kerns,* 83 Cal. 553 [23 Pac.
691]; *Knowlton* v. *Mackenzie,* 110 Cal. 183 [42 Pac. 580].)
Subdivision 1 of section 283 of the Code of Civil Procedure
provides that an attorney shall have authority to bind his
client in all steps of the action by his agreement filed with
the clerk, or entered upon the minutes of the court, and the
remission in this case is such an agreement and it was filed
as required by the section. Appellant, in its contention as
to this subdivision, has cited a number of authorities as
having "authoritative force and illustrative value" to the
effect that as the custom and practice is to state in the
orders that unless the *plaintiff* accepts the remission within
a certain period the motion for a new trial will be granted,
it must be held that the plaintiff must sign the remission
in every case. But where there is no specific provision re-
quiring the signature of the guardian *ad litem,* and there is
no suggestion of a lack of consent by such guardian, the

signature of the attorney is sufficient without that of the guardian *ad litem* to bind the minor.

As to the second proposition—that the court did not approve the remission—appellant cites sections 372 and 1769 of the Code of Civil Procedure. We shall assume for the purposes of the decision that the remission constituted a compromise or a compounding of the claim within the meaning of those sections.

It is a fact that there was no formal "approbation of the court." The statute does not require that the approval shall be expressed in any particular manner or that it shall, in terms, be entered in the minutes. We have found no authority in this state as to how the approval is to be given. It has been held elsewhere that in the case of a sale of real property of a minor, the confirmation by the court of the sale required by the statute need not necessarily appear by a formal entry of record; it is sufficient if the approval appear from the clerk's minutes, or if it can be gathered from the whole record. (Woerner's American Law of Guardianship, 275; *Henry* v. *McKerlie,* 78 Mo. 416, 430; *Gilbert* v. *Cooksey,* 69 Mo. 42.) The same rule was applied in *Daffron* v. *Modern Woodmen of America,* 190 Mo. App. 303 [176 S. W. 498], involving a settlement of a void benefit policy by a guardian *ad litem.* There is authority for the proposition that the approval of the court may be implied from the entry of judgment in regular course. (*Tripp* v. *Gifford,* 155 Mass. 108 [31 Am. St. Rep. 530, 29 N. E. 208]; *Walsh* v. *Walsh,* 116 Mass. 377 [17 Am. Rep. 162]; *Bunnell* v. *Bunnell,* 111 Ky. 566 [64 S. W. 420, 65 S. W. 607]; *Missouri Pacific Ry. Co.* v. *Lasca,* 79 Kan. 311 [17 Ann. Cas. 605, 21 L. R. A. (N. S.) 338, 99 Pac. 616]; *Burke* v. *Northern Pac. Ry. Co.,* 86 Wash. 37 [Ann. Cas. 1917B, 919, 149 Pac. 335]; *Franklin Sav. Bank* v. *Taylor,* 53 Fed. 854 [4 C. C. A. 55]; *Glover* v. *Bradley,* 233 Fed. 721 [Ann. Cas. 1917A, 921, 147 C. C. A. 487]; *Robison* v. *Floesch Const. Co.,* 291 Mo. 34 [20 A. L. R. 1239, 236 S. W. 332].) We quote from *Beliveau* v. *Amoskeag Mfg. Co., supra,* that it is not in every instance necessary to formally bring the settlement to the attention of the court. "We apprehend it makes no difference, practical or legal, whether the agreement of the counsel to make them is expressed orally in open court, and the entries are there-

upon made upon the records by its order, or whether the
agreement is reduced to writing by the counsel, and duly
filed and entered upon the records, without being expressly
brought to the court's attention, and without obtaining its
sanction, which, in practice, is never refused, and, at most,
is but the merest formality. In such a case, the assent of
the court is to be presumed.'' [2] The primary duty of
the court is to guard the interests of the minor, and if an
order or judgment is entered by the court with all the facts
before it, after due judicial examination and adjudication,
it will be binding upon the minor. It is only where it
affirmatively appears that the court did not make any judi-
cial inquiry as to whether the settlement or consent decree
was for the benefit of the minor that it is not binding.
(*Rankin* v. *Schofield,* 71 Ark. 168 [100 Am. St. Rep. 59,
66 S. W. 197, 70 S. W. 306]; *Thompson* v. *Maxwell Land
Grant & Ry. Co.,* 168 U. S. 451 [42 L. Ed. 539, 18 Sup. Ct.
Rep. 121, see, also, Rose's U. S. Notes]; *Cotterell* v. *Koon,*
151 Ind. 182 [51 N. E. 235]; *Ferrell* v. *Broadway,* 126
N. C. 258 [35 S. E. 467]; *Millsaps* v. *Estes,* 137 N. C. 535
[107 Am. St. Rep. 496, 70 L. R. A. 170, 50 S. E. 227].)
In *Tripp* v. *Gifford, supra,* it was declared: ''Sometimes, but
very rarely, the proposed arrangement is brought to the
attention of the court, and its sanction obtained. In most
instances, however, the settlement is made and the judgment
entered without calling the attention of the presiding justice
to it, or obtaining his approval. That such judgments con-
clude the minor, we have no doubt; . . . and even in equity,
if a decree is entered against him by consent without spe-
cial inquiry, he will be bound by the decree.''

[3] It would be idle to hold, under the circumstances
presented here, that the court did not give its approbation
to the remission with regard to the best interests of the
minor. In deciding that twelve thousand dollars was the
full value of respondent's claim for damages the court must
necessarily have concluded that in executing the remission
the attorney secured for respondent all that he was entitled
to receive. In strictness, the guarding of the best interests
of respondent was not an element in the inquiry as to what
would be suitable damages for the injury; but the deter-
mination of that question necessarily involved the other—

whether the attorney was acting for the best interests of respondent in agreeing to accept the lesser sum.

On the third proposition—that an attorney cannot bind his client, whether minor or adult, by joining in a remission of a judgment which has been entered and docketed—appellant relies on subdivision 2, section 283 of the Code of Civil Procedure. With reference to this subdivision it is urged that "it is directly and primarily applicable"—that after judgment an attorney has power only upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment. This contention is the equivalent of a claim that when a money judgment in favor of a minor has been entered and docketed, the authority of the attorney for the guardian *ad litem* is limited to the discharge of the judgment and to prosecute the appeal. This, in effect, would be to deny to the minor one of the incidents of the remedy of a motion for a new trial—that is to say, the right to accept a less sum where there is no suggestion the guardian *ad litem* does not consent to the reduction or that the court does not give its approval. This is not the law. [4] Where the authority of the attorney is not disputed by the client he may after the entry of judgment represent the client on a motion for a new trial and in the absence of fraud or mistake agree to the reduction of the judgment. The attorney's execution of the remission is merely a step in fixing the amount of the judgment. It follows that subdivision 2 has no application where a motion for a new trial has been made and is undetermined.

Appellant contends that the above claim is fortified by section 1810b of the Code of Civil Procedure, to the effect that "if said judgment is for money, and there is no general guardian of said minor, one shall be appointed by the court, and the entire amount of the judgment shall be paid to and cared for by such general guardian, under the control of the court." This contention involves the claim, already disposed of, that the entry and docketing of the judgment for twenty-five thousand dollars on June 19, 1922, precluded the reduction thereof. It would appear from the reply brief of appellant that in a letter to the attorney for respondent, appellant inquired whether section 1810b had been complied with. The reply was in the affirmative. As

a matter of fact no general guardian was appointed. The explanation is given in respondent's brief that the appointment could not be made because there was no property to be delivered to a general guardian. [5] Section 1810b is addressed to the *payment* of the judgment and not to matters preliminary thereto. The *payment* of the judgment had not been reached, and we will not assume that a general guardian will not be appointed to effect a satisfaction of the judgment.

It is clear from the foregoing that the signature of the guardian *ad litem* was not necessary to render the remission binding on respondent, that the court gave its approval, and that the act of the attorney in executing the remission before the motion for a new trial was determined was the act of the guardian *ad litem* and binding on respondent even though the judgment for twenty-five thousand dollars had been entered and docketed.

This brings us to consider appellant's final contention that the reduced judgment of twelve thousand dollars is still so grossly excessive as to appear to have been given under the influence of passion or prejudice. On appeal this presents a question of law, that is to say, whether or not the trial court abused its discretion in fixing the sum of twelve thousand dollars.

The injuries of respondent, according to the uncontradicted testimony, were to the right leg, the flesh being torn off from a point four inches above the knee to a point five inches below the knee, three-fourths of the way around the leg, and the tissue of the knee joint being torn open "one inch so you could see the inside of the joint"; the tissues of the left ankle and foot were badly torn, the injury being of the same nature as that of the right knee. Dirt and clothing were ground into the wounds, causing infection. The flesh that was not actually torn off, "was so bruised and killed by the physical violence that it later sloughed off" and an infection set in adding to the loss of tissue. The boy suffered greatly and for two or three weeks after the accident it was necessary to give him opiates. Six weeks afterward, from twenty to thirty square inches of skin were grafted on the raw places on the left ankle and foot and on the seventh week forty square inches were grafted on the right knee. In order to perform the original operation

192 Cal.—23

an anesthetic was necessary. Efforts were made by the use of some mechanical device to keep the muscles and joints from stiffening. This device was used three and a half months and caused great pain and "hurt terrible." An ulcer or running sore on the right knee required constant dressing and did not heal until over a year after the accident. The respondent's right knee is stiff and bent and the right leg is somewhat shorter than the other, due to this bowing at the knee joint; the left foot is deformed, there is no lateral motion in the ankle and there is a limitation in the extension of the foot. One of the physicians testified: "The flexion of the knee-joint was only possible to about forty-five degrees. The lateral motion of the left ankle-joint was also limited about fifty per cent. . . . At the time the treatment was completed, he was able to walk without the aid of crutches with a slight limp. . . . The scar about the right knee extended over an area from four inches above to four inches below the knee-joint, running posteriorly, behind the leg, and there was also a band which extended across the front of the leg. The flexion in the knee-joint was limited to a right angle or ninety degrees; the extension of the joint was limited about five per cent. There was the appearance of an external bowing of the leg, which was due mainly to the contraction of the scar tissue. . . . There was a scar across the left ankle-joint extending from one malleolus to another— . . . There is a deformity of three outer toes apparently due to the injury. The toes are healed in a position of partial extension and the motion is fairly well limited. The motion in the left ankle-joint is limited in extension to about a hundred and thirty-five degrees. The flexion is practically normal." As a result of the injury, both feet of respondent have become "flat," and the circulation in the injured limbs is impaired, the result being that cold weather affects the injured limbs to a great extent. The right leg showed a diminution in size of one and one-quarter inches below the knee. The flesh over the injured portions of the knee and ankle is scar tissue which is sensitive to pressure and the tendency of which is "to contract and keep on contracting." The question was asked whether the motion in the stiffening joints would improve by treatment and the answer was given that "the scar is deep and is close to the bone and tendons and it is doubtful if he ever

gets much more movement there.'' Respondent is described as having been rendered emotional and nervous by the injury. It was over a year before the right knee healed and he missed a year of school. There is a conflict in the testimony as to what extent respondent will outgrow the injuries and as to the improvement in the functional use of the limbs. It was testified that he would never have normal action and motion in either the right leg or left ankle— Dr. C. E. Early, a witness for appellant, saying he would ''always have a certain degree of limitation of motion in both his left ankle and right knee.'' The evidence is in conflict as to whether or not the shortening of the right leg was caused by the contraction of the scar, resulting in curvature of the spine and flat feet, and whether or not these conditions could be improved and eradicated by treatment. X-ray pictures showed a porous condition of the bone and there was evidence that this might not be due to the injury but to the youth of the boy. [6] In view of the evidence we cannot hold that the award of twelve thousand dollars is the result of passion or prejudice, or that, as appellant contends, ''the amount allowed by the trial court after the reduction is to suggest at first blush that the amount is punitive in its nature.''

[7] Respondent makes several contentions in support of the claim that the judgment was never modified and that, therefore, it stands for the original sum of twenty-five thousand dollars. It is first contended that the order on the motion for a new trial not having been given in open court should have been signed by the judge, and not having been so signed it was a nullity. The minute entry shows the order was made in open court and it is not claimed that any steps were taken to have the minute entry amended. Nor does it appear that the point was otherwise made in the court below. [8] It is next urged ''that the trial judge had not jurisdiction to require the respondent to accept a reduced judgment or have a new trial, after a second jury had rendered a verdict for the same amount given by the first jury.'' This contention proceeds upon the theory that as this court remitted the case for retrial on the sole issue of the amount of the damages, when the jury fixed the amount the court had no alternative but to accept such sum as final. This point is without merit, for it was the duty of

the trial court in considering the assignment of excessive damages on the motion for a new trial to review the evidence received on that issue and determine anew whether the amount awarded was justified. The action of this court limiting the retrial to the amount of the damages put that issue at large to be determined just as if there had been no previous trial of the cause.

[9] Respondent in the "election to remit" incorporated a demand for interest on the reduced judgment from April 16, 1921—the date of the entry of the first judgment. It is urged here that the liability of appellant having been fixed on the first trial and confirmed on appeal, it became the law of the case, and the subsequent judgment should bear interest from the date of the former. Interest has relation to an ascertained principal sum. The amount of the judgment in this case after reversal was not ascertainable until the question of excessiveness presented by the motion for a new trial had been determined, and, hence, appellant would not meanwhile be in default for interest. (*Cox* v. *McLaughlin,* 76 Cal. 60, 67 [9 Am. St. Rep. 164, 18 Pac. 100].)

Respondent's final point, that the appeal should be dismissed because the complaint and answer were not printed in the record, and that this cannot be dispensed with, is sufficiently answered by the concluding portion of section 953c of the Code of Civil Procedure (Stats. 1919, p. 261).

Judgment affirmed as modified.

Wilbur, C. J., Lennon, J., Waste, J., Myers, J., Kerrigan, J., and Seawell, J., concurred.